Defendant, Glen Jones, appeals from an order of the circuit court of Macon County dismissing as frivolous and patently without merit his petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 1998)). On appeal, defendant argues that Public Act 83-942 (Pub. Act 83-942, eff. November 23, 1983 (1983 Ill. Laws 6200)) was unconstitutional because it violated the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). We affirm.
The defendant was sentenced May 13, 1986, and filed his postconviction petition January 28, 1997. The trial court found the postconviction petition was not timely filed and further did not allege any errors by the trial court that were not ruled upon by this court in the direct appeal. Defendant acknowledged that this court affirmed his conviction and sentence on direct appeal (People v. Jones, No. 4-86-0645 (June 2, 1987) (unpublished order under Supreme Court Rule 23)) and that defendant's motion for leave to appeal was denied by the Supreme Court of Illinois on October 7, 1987. People v. Jones, 116 Ill.2d 568, 515 N.E.2d 119 (1987). On appeal, defendant argues only that Public Act 83-942 authorizing first-stage dismissal violates the single subject clause of article IV, section 8, of the Illinois Constitution.
The State acknowledges that this appeal presents a legal question reviewed de novo (People v. Wooters, 188 Ill.2d 500, 504-05,722 N.E.2d 1102, 1105 (1999)) and that a challenge to the constitutionality of the statute may be raised for the first time on appeal (Wooters, 188 Ill.2d at 510, 722 N.E.2d at 1108, citing People v.Bryant, 128 Ill.2d 448, 453-54, 539 N.E.2d 1221, 1223-24 (1989)).
The Act provides a three-stage process. In the first stage, the postconviction court must review the petition within 90 days after its filing, and if that court determines that the postconviction petition in a case not involving the death penalty is frivolous or patently without merit, it shall dismiss the petition, specifying its findings of fact and conclusions of law. 725 ILCS 5/122-2.1(a)(2) (West 1998). See People v.Gaultney, 174 Ill.2d 410, 418, 675 N.E.2d 102, 106 (1996); People v.Dredge, 148 Ill. App.3d 911, 912, 500 N.E.2d 445, 446 (1986). In a case not involving the death penalty, the appointment of counsel is not available at the first stage of the postconviction proceeding. People v.Lawrence, 211 Ill. App.3d 135, 137-38, 569 N.E.2d 1175, 1177 (1991). Section 122-2.1 of the Act was added by Public Act 83-942.725 ILCS 5/122-2.1 (West 1998).
The Supreme Court of Illinois has recently applied the single subject clause on a number of occasions. See People v. Cervantes, 189 Ill.2d 80, 83-98, 723 N.E.2d 265, 266-74 (1999); People v. Reedy, 186 Ill.2d 1, *Page 1191 
8-16, 708 N.E.2d 1114, 1117-21 (1999); Johnson v. Edgar, 176 Ill.2d 499, 514-18, 680 N.E.2d 1372, 1379-81 (1997).
 "In determining whether a particular enactment violates the single subject requirement, the term `subject' is to be liberally construed in favor of upholding the legislation, and the subject may be as comprehensive as the legislature chooses. People v. Wooters, 188 Ill.2d 500, 511 (1999); Arangold v. Zehnder, 187 Ill.2d 341, 351-52 (1999); Johnson, 176 Ill.2d at 515; People v. Dunigan, 165 Ill.2d 235, 255 (1995); People ex rel. Ogilvie v. Lewis, 49 Ill.2d 476, 487 (1971). Nevertheless, a legislative act violates the single subject rule when the General Assembly `includes within one bill unrelated provisions that by no fair interpretation have any legitimate relation to one another.' Reedy, 186 Ill.2d at 9; see also Wooters, 188 Ill.2d at 511; Arangold, 187 Ill.2d at 352; Johnson, 176 Ill.2d at 515; Dunigan, 165 Ill.2d at 255. Therefore, in order to satisfy the single subject requirement, the matters included within the enactment must have a `natural and logical connection' to a single subject. Arangold, 187 Ill.2d at 352; Reedy, 186 Ill.2d at 9; Johnson, 176 Ill.2d at 515." Cervantes, 189 Ill.2d at 84, 723 N.E.2d at 267.
Public Act 83-942 contains seven sections. Section 1 of Public Act 83-942 amended section 12-9 of the Criminal Code of 1961 (Criminal Code) defining the defense of threatening public officials by adding municipal officers such as mayor, village president, alderman, et cetera, to the definition of "public official." Ill. Rev. Stat. 1985, ch. 38, par. 12-9. Section 1A of Public Act 83-942 amended sections 122-1 and 122-4 of the Act and added sections 122-2.1 and 122-8 of the Act (Ill. Rev. Stat. 1985, ch. 38, pars. 122-1, 122-4, 122-2.1, 122-8), all within the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (Ill. Rev. Stat. 1985, ch. 38, pars. 100-1 through 126-1). Section 2 of Public Act 83-942 amended the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1985, ch. 38, pars. 1001-1-1 through 1008-6-1) in the following five ways: (1) expanded the powers and duties of the Department of Corrections (DOC) to authorize the Department of Central Management Services to accept bids from local governmental entities for the construction of DOC facilities, allowing financing through revenue bonds, creating limits on lease terms, and requiring that bids be accepted by the General Assembly; (2) required DOC to provide statistical reports to the General Assembly concerning the numbers and types of offenders in the facilities, inmate participation and rehabilitation programs, the ratio of guards and employees to inmates, the capacity of each facility, data on floor space and double-celled inmates, the status of DOC capital projects, and projections on future prison population; (3) required the governor *Page 1192 
to notify the president of the senate, speaker of the house, and minority leaders in both houses of the General Assembly prior to any public or private announcement regarding site selection for new prison construction; (4) deleted the requirement that a minimum of 50 feet of floor space be provided per inmate and precluded the DOC from mandating minimum space footage requirements in local jails; and (5) expanded the criminal sentencing commission to 13 members and amended the duties and authorities of the commission and commissioners with regard to terms, vacancies, officers, staff, and transition and continuity. Ill. Rev. Stat. 1985, ch. 38, pars. 1003-2-2, 1003-5-3.1, 1003-7-2b, 1003-7-3, 1005-10-1. Section 3 of Public Act 83-942 amended section 11-74-2 of the Illinois Municipal Code to correspond with section 3-2-2 of the Unified Code with regard to bidding on prison construction. Ill. Rev. Stat. 1985, ch. 24, par. 11-74-2(1)(c). Section 4 of Public Act 83-942 amended section 2 of the Industrial Building Revenue Bond Act to include prison construction under the definition of "industrial project." Ill. Rev. Stat. 1985, ch. 85, par. 872(b)(3). Section 5 of Public Act 83-942 amended section 67.02 of the Civil Administrative Code of Illinois to allow for an agreement with a municipality or county to construct, remodel, or convert a structure to serve as a correctional facility consistent with the amendment to section 3-2.2 of the Unified Code. Ill. Rev. Stat. 1985, ch. 127, par. 63b13.2(e). Section 6 set the effective date of Public Act 83-942.
Public Act 83-942 expanded the scope of the criminal offense of threatening a public official, addressed prison overcrowding and construction, expanded the number of members and duties of the criminal sentencing commission, and narrowed the scope of the Act. The various provisions of Public Act 83-942 have a natural and logical connection to a single subject, the criminal justice system. All of the sections in Public Act 83-942 concern criminal law or the administration of criminal justice. See People v. Smith, 314 Ill. App.3d 1111, 1112-13,734 N.E.2d 104, 105 (2000); People v. Majors, 308 Ill. App.3d 1021, 1030-33, 721 N.E.2d 753, 760-62 (1999); People v. Dixon,308 Ill. App.3d 1008, 1012-16, 721 N.E.2d 1172, 1175-79 (1999).
Defendant relies on Cervantes. The public act determined to be unconstitutional in Cervantes (Pub. Act 88-680, eff. January 1, 1995 (1994 Ill. Laws 2750)) is distinguishable from the public act in this case. In Cervantes, the supreme court found no natural and logical connection between the subject of enhancing neighbor hood safety and amending the civil provision of the WIC (Women, Infants, and Children) Vendor Management Act (410 ILCS 255/1 through 9 (West 1992)) or the creation of the Secure Residential Youth Care Facility Licensing *Page 1193 
Act (730 ILCS 175/45-1 through 999-1 (West 1996)). Cervantes, 189 Ill.2d at 91, 723 N.E.2d at 270-71. The court specifically stated that it could not ascertain how the repeal of the Department of Public Health's authority to use and invest WIC penalties and training fees was germane to furthering the safety of neighborhoods. Cervantes, 189 Ill.2d at 94, 723 N.E.2d at 272. In addition, the court in Cervantes determined that none of the provisions of the licensing act included in Public Act 88-680 referred to rehabilitation of juvenile offenders or the implementation of increased juvenile penalties, but instead set forth "a litany of administrative rules and procedures comprising a comprehensive licensing scheme for the purpose of promoting private ownership of these [youth care] facilities." Cervantes, 189 Ill.2d at 96, 723 N.E.2d at 273.
Defendant contends that the legislative debates on Public Act 83-942 support his disparate purposes analysis because most of the debate focused on prison overcrowding. Addressing prison overcrowding through prison construction is a subject within the purview of the administration of criminal justice. We therefore reject defendant's argument. Although the supreme court did consider legislative debates in Cervantes, where the relationship of the subjects of the various provisions of the public act is apparent from the language employed in the public act, resort to the debates is not controlling. As in statutory construction analysis, the intentions or objections of the individual legislators do not control the overall intent of the legislature as expressed in the language of the public act. Kunkel v. Walton, 179 Ill.2d 519, 536,689 N.E.2d 1047, 1055 (1997) (there is no need to resort to extrinsic aids for construction such as legislative history if the statute is clear and unambiguous, and statements by sponsors of bill are not controlling on the court's interpretation). Merely because one or a few senators or representatives object to the inclusion of a section in a bill does not affirmatively demonstrate that the resultant public act violated the single subject clause. Public Act 83-942 did not violate the single subject clause of the Illinois Constitution.
The judgment of the circuit court of Macon County is affirmed.
Affirmed.
KNECHT and COOK, JJ., concur. *Page 1194